UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTAQUIO YESQUEN AGUIRRE,

v.  Case No. 8:05-cr-26-T-17TBM
    8:08-cv-243-T-17TBM

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant's amended 28 U.S.C. § 2255 motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. cv-11, cr-312). A review of the record demonstrates that the amended motion to vacate must be denied.

Aguirre's Original Motion To Vacate Sentence (Doc. cv-1)

Procedural Background

In January 2005, a grand jury in the Middle District of Florida indicted Eustaquio Yesquen Aguirre and several other men on charges of conspiring to possess five kilograms or more of cocaine with the intent to distribute it, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a), (g), and (j) and 21 U.S.C. § 960(b)(l)(B)(ii), and possessing five kilograms or more of cocaine with the intent to distribute it, while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. app. § 1903(a) and (g), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(l)(B)(ii). CR-1. Aguirre pled guilty to both counts without a plea agreement. CR-97, 104.

The court sentenced Aguirre to serve 135 months' imprisonment. CR-199. Aguirre

pursued a direct appeal, CR-209, arguing that the sentencing court erred in not granting him a mitigating role adjustment and that he should be resentenced because his sentence was unreasonable. (See Aguirre's appellate brief at Attachment A and the United States' reply brief at Attachment B.)

The Eleventh Circuit Court of Appeals affirmed his sentence. *United States v. Aguirre*, 204 Fed. Appx. 796 (11th Cir. 2006); CR-293. The Supreme Court denied Aguirre's petition for writ of certiorari on March 5, 2007. *Aguirre v. United States*, 127 S.Ct. 1497 (2007).

Aguirre's pending section 2255 motion, docketed February 4, 2008, CR-303, CV-1, was timely. *Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001) (when a prisoner timely petitions for certiorari review, section 2255 limitation period "begins to run when the Supreme Court denies certiorari or issues a decision on the merits.").

Factual Background

In January 2005, a United States Coast Guard cutter intercepted a fishing vessel, the Andres Abel in the Pacific Ocean. Presentence Investigation Report ("PSR") ¶ 10. Eustaquio Yesquen Aguirre was the vessel's engineer and one of its eight crew members. PSR ¶ 10-12. A crew from the Coast Guard cutter boarded the Andres Abel. PSR ¶ 11. They discovered that a hidden compartment in the fuel tank contained 2,647 kilograms of cocaine. PSR ¶ 11.

Aguirre and the other crew members were arrested and indicted. CR-1. At sentencing, Aguirre sought an offense-level reduction pursuant to the advisory United States Sentencing Guidelines based on his role in the offense. CR-253 at 6. He argued that he had "had no interest in the drugs," that he "was a crew member," that he "didn't even

know where the destination where the drugs was going to be," that he "was basically there as a strong back," and that "similarly situated defendants on vessels with this sort of large quantity of drugs have received role reductions by other judges in this division." CR-253 at 6.

The United States Probation Office responded: "[P]robation just hasn't seen the evidence showing this defendant is less culpable than others on the boat. He's an average participant, as far as we're aware and the role adjustment is not appropriate." CR-253 at 7. The United States added its view that Aguirre was "an average participant considering the other crew members onboard." CR-253 at 8.

The Court overruled Aguirre's objection, ruling that "there's no evidence to show that he's less culpable than the average participant in the conspiracy." CR-253 at 8. Aguirre faced a sentencing range of 135-168 months' imprisonment under the advisory guidelines. CR-253 at 10. Aguirre argued for a lower sentence based on the factors set forth in 18 U.S.C. § 3553(a), including his poverty, his need to support his family, and his mother's and his son's medical needs. CR-253 at 10-12, 15.

The United States responded that the "exceptional amount" of cocaine in this case--more than 2,500 kilograms--justified a sentence within the guidelines range, particularly given that that range applies to offenses involving as little as 150 kilograms of cocaine. CR-253 at 14. The large quantity of cocaine notwithstanding, the United States did not oppose a sentence at the low end of the applicable range. Id.

While the court acknowledged the poverty in Colombia and expressed sympathy for Aguirre's need to help his loved ones, CR-253 at 12-13, 15-16, the court noted the need for deterrence and the great harm caused by the vast quantities of cocaine being

transported. CR-253 at 12-16. The court sentenced Aguirre at the low end of his advisory guidelines range: 135 months imprisonment. CR-253 at 17.

## Standards of Review

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill,* 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, a defendant claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial. *Upshaw v. United States*, 2008 WL 638261 at *1 (M.D. Fla., Mar. 5, 2008) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

## Discussion

Aguirre alleged that his counsel was ineffective because he advised him to plead guilty to a crime he did not commit. CV-1 at 4. Aguirre contended that when he was recruited for the trip, there were no drugs on board the vessel. Id. Once the vessel was out to sea, it was loaded with cocaine but Aguirre could do nothing because they were in the middle of the ocean. Id. Aguirre claimed that he "did not have the requisite intent to possess with intent to distribute nor to import cocaine" and that had the case advanced to trial, the United States would have been unable to prove intent. Id.

To be entitled to habeas relief in cases where a guilty plea is challenged based on a claim of ineffective assistance of counsel, "a petitioner must 'prove serious derelictions on the part of counsel sufficient to show that [the] plea was not, after all, a knowing and intelligent act.' " *Hansen v. United States*, 2006 WL 2375365, *2 (M.D. Fla. Aug. 16, 2006), (quoting *Cruz v. United States*, 2006 WL 1889947, *3 (11th Cir. 2006)). "A defendant who

enters a guilty plea on the advice of counsel may attack the voluntary and intelligent character of the plea by showing that counsel acted incompetently by advising defendant to accept the plea." *United States v. Zazueta*, 2006 WL 1440891, *4 (D. Ariz. 2006).

During Aguirre's change of plea hearing (after he was allowed time to consult with his counsel), Aguirre acknowledged, under oath, that he understood the charges alleged in the indictment; that is, conspiracy to possess five kilograms or more of cocaine with the intent to distribute it, while on board a vessel subject to the jurisdiction of the United States and possession of five kilograms or more of cocaine with the intent to distribute it, while on board a vessel subject to the jurisdiction of the United States. CR-163 at 3, 12. Aguirre was advised: "Basically there's two charges. The first charge is that you and these other gentlemen assisted each other in possessing the cocaine that was on board that boat on - back on January 17th. The second charge is what we call a conspiracy charge. The allegations there are that you agreed with these other gentlemen to possess and to distribute that cocaine that was on the boat." Id. at 10-12.

After confirming that he understood he faced a mandatory minimum sentence of ten years and up to a possible maximum sentence of life imprisonment, Aguirre stated that he wished to plead guilty to both charges. Id. at 12-1 3. Aguirre acknowledged that he understood the rights he was forfeiting by his guilty pleas including the right to a jury trial and right to remain silent and that he understood the prosecution's burden of proof. Id. at 15-16. As to the conspiracy charge, Aguirre was told:

> On the conspiracy charge, he [prosecutor] would have to show through his witnesses and evidence that at least two people came to an agreement and understanding to commit an illegal plan, and here the illegal plan that is alleged is the distribution of the cocaine on that boat. He would further have to prove beyond a reasonable doubt that you were a knowing

>and willful participant in the plan.
>
>   On the second charge, he [prosecutor] would have to show that while on board of [sic] that boat, that you knowingly and willfully possessed the cocaine or assisted each other in possessing it and that you did so with the intent that that cocaine be distributed.
>
>   At a trial, the jury would be told that if the prosecutor proved the essential elements beyond a reasonable doubt, it should find you guilty. On the other hand, the jury would be told that if the prosecutor failed to prove one of those elements beyond a reasonable doubt, they should find you not guilty.

CR-163 at 16-17. Aguirre was further advised that if he proceeded to trial, his lawyer could assist him in several ways including calling him to the witness stand to tell his "side of the story." Id. at 17. Aguirre did not claim that he misunderstood any of those facts. Id. at 18. Aguirre acknowledged that he had not been promised a certain sentence, that neither he nor any family member had been threatened to obtain his guilty pleas, and that he was not "being forced or tricked in any way" into pleading guilty. Id. at 20. Aguirre confirmed that he had no complaints regarding his counsel. Id.

   The United States presented the following factual basis in support of Aguirre's guilty pleas:

>   MR. PORCELLI: Your Honor, if this case were to proceed to trial, the United States would be able to establish beyond a reasonable doubt that on or about January 15, 2005, these Defendants and others were apprehended by the United States Coast Guard in international waters on a vessel, to wit: A fishing vessel, Andrea Sabal, (sic) that was a vessel subject to the jurisdiction of the United States.
>
>   As part of an unlawful agreement to possess 5 or more kilograms of cocaine with the intent to distribute it, these Defendants and others were knowingly and willfully transporting approximately 218 bales of cocaine at approximately 20 kilograms of cocaine per bail (sic) which were to be delivered to other individuals.

CR-163 at 24. Aguirre acknowledged this was an accurate statement of what happened on

the boat but contested that he knew the amount of cocaine on the vessel, claiming that he was pleading guilty to "5 kilograms or more of cocaine " as charged in the indictment. Id. at 25. Aguirre specifically acknowledged he knew there was cocaine on the boat and that is was to be distributed, stating "I just knew there was some bales [of cocaine] they brought on there." Id. at 25. When Aguirre contested his knowledge of the drug quantity, the magistrate judge advised: "Well, understand you're pleading guilty here to possessing with intent to distribute cocaine, and you're also agreeing that the weight involved was more than 5 kilograms. . . . If it is your position that there was not more than 5 kilograms or you didn't conspire to possess or to distribute that amount, you should go to trial, . . . ".  Id. at 26. After consultation with this counsel, Aguirre stated, "I do admit it was 5 kilograms or more, but the exact amount I did not know." Id. at 27.

At no time during his change of plea hearing did Aguirre advise the court of the facts he claimed in his original motion to vacate: that he had no knowledge that the vessel was going to be used for the transportation of cocaine and that the cocaine was loaded once the vessel was at sea, making his escape impossible. The only thing Aguirre challenged at the guilty plea hearing was the quantity of cocaine.

Likewise, at sentencing, Aguirre made no mention of the claims he raised in his original motion to vacate. Aguirre claimed he had no interest in the drugs, did not know the drugs' destination, and "was basically there as a strong back." CR-253 at 8. While acknowledging his involvement in the offense, Aguirre tried to minimize his role, claiming that he was a poor man from Colombia, and that "his involvement in this activity was to support his family without much other alternative ways to support his family." Id. at 13. Aguirre stated, "What I did I did on account of my son who is epileptic . . . . He needed to

see a doctor, and I wasn't able to help him." Id. at 18. Aguirre also claimed he committed the offense to help his mother who was suffering from back pain. Id.

To the extent Aguirre claimed his counsel was ineffective because he advised him to plead guilty although the United States could not prove intent during a trial, Aguirre fails to meet either prong of *Strickland.* Aguirre does not identify if or when he ever told his counsel of his claims. Counsel cannot be deemed ineffective regarding his advise to plead guilty if he was unaware of the "facts." Aguirre has failed to prove deficient performance. Even if counsel did not discuss the intent element with Aguirre prior to his guilty pleas, the magistrate judge specifically addressed intent during his change of plea hearing, advising Aguirre to proceed to trial if he felt he should. **See** CR-163 at 16-1 7, 26. As such, Aguirre failed to establish any prejudice.

To the extent Aguirre challenged the knowing and voluntary nature of his guilty pleas, his claim fails. When viewed in its entirety, Aguirre's guilty pleas were knowing and voluntary and he was advised of the intent element during his change of plea hearing. The unsworn, unsupported claims advanced by Aguirre do not support a finding of ineffective assistance of counsel nor do they override his sworn statements made during his change of plea. **See** *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1 977) ("Solemn declarations in open court carry a strong presumption of verity.").

Aguirre's original motion to vacate did not warrant relief.

### Aguirre's Amended Motion To Vacate (Doc. cv-11)

On August 15, 2008, Aguirre filed a reply to the Government's response to his original motion to vacate. (Doc. cv- 7) The Court construed the reply as a motion to file an amended motion to vacate. (Doc. cv-8). On September 18, 2008, Defendant filed a motion

9

to amend his motion to vacate. (Doc. cv-9 with the amended motion to vacate incorporated). The Court docketed the amended motion to vacate (Doc. cv-11) and ordered the Government to respond, which it did (Doc. cv-12).

The Government moved for dismissal of Petitioner's amended motion to vacate, set aside, or correct sentence as time-barred under section 2255 and to stay this Court's September 30, 2008, order directing the United States to respond on the merits to Petitioner's section 2255 motion pending a ruling on the motion to dismiss.

The Amended Motion To Vacate Is Time-Barred

Following sentencing, Aguirre directly appealed his criminal conviction and sentence. *United States v. Aguirre,* 204 Fed. App'x 796 (11th Cir. 2006); D-293. The Supreme Court denied Aguirre's petition for writ of certiorari on March 5, 2007. *Aguirre v. United States*, 127 S. Ct. 1497 (2007). Aguirre's original motion met the jurisdictional requirement of being timely filed by being submitted on February 4, 2008, as the year period for timeliness did not expire until March 5, 2008. Aguirre's amended motion's filing date of September 16, 2008, falls more than six months beyond the statutory imposed one-year period. *See Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001) (when a prisoner timely petitions for certiorari review, section 2255 limitation period "begins to run when the Supreme Court denies certiorari or issues a decision on the merits."); see also, 28 U.S.C. § 2255 ¶ 6(1).

Congress enacted the Antiterrorism and Effective Death Penalty Act to advance the finality of criminal convictions. *Mayle v. Felix*, 545 U.S. 644, 654-56 (2005). To that end, it adopted procedural requirements, including "a tight time line, a one-year limitation period ordinarily running from the date on which the judgment became final" as the deadline for

collateral review and a "more demanding" pleading standard than the notice pleading requirements applicable to ordinary civil cases. *Id.* Per these requirements, within the one year limitation period, a federal prisoner claiming entitlement to relief from his conviction or sentence pursuant to 28 U.S.C. § 2255 must, in his initial motion, "specify all grounds for relief available" and "state the facts supporting each ground[.]" See Rules Governing Section 2255 Proceedings, 2(c); *cf. Felix*, 545 U.S. at 655 (reviewing materially identical rule relating to 28 U.S.C. § 2254 proceedings). Thus, even a pro-se litigant must fairly raise and argue all of his claims in his initial application for relief, giving the responding party a fair opportunity to respond to the claim. *See Walker v. Dugger*, 860 F.2d 1010, 1011 (11th Cir. 1988) (pro se litigants are entitled to liberal construction, but issues mentioned only superficially are not properly raised).

It is beyond dispute that Aguirre's amended motion is facially untimely, and as such, any claims raised for the first time in the amended motion have to relate back to the original motion to be valid under Fed. R. Civ. P. 15(c). *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (new claims alleging different trial errors are not part of the same course of conduct and do not relate back to the original motion). Aguirre's two new grounds "will relate back and be considered timely if they 'arose out of the conduct, transaction, or occurrence' set forth in his original § 2255 motion." *Id.* In order to relate back, "an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." *Farris v. United States,* 333 F.3d 1211, 1215 (11th Cir. 2003). Rather, the new claims must arise "from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.'" *Davenport*, 217 F.3d 1344; *see also, Pruitt v. United States*, 274 F.3d 1315,

11

1319 (11th Cir. 2001); *accord Mayle*, 545 U.S. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.") Otherwise, "amendment to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence. Such a broad view of 'relation back' would undermine the limitations period set by Congress." *Davenport*, 217 F.3d at 1345-46 (quoting *Pruitt*, 274 F.3d at 1318). Thus, while the rule "contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment." *Pruitt,* 209 F.3d at 1318.

Aguirre, in seeking to amend his motion, fails to state claims that add or amplify facts already alleged in support of his original claim. In so doing, his new claims are untimely unless the claims relate back to the original motion. Aguirre is attempting to introduce a new legal theory based on facts different from those underlying the timely claim. "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Dean*, 278 F.3d at 1221. Aguirre's new claims do not relate back to his original, timely-filed claim. *See Davenport*, 217 F.3d 1341.

If an amendment is untimely or fails to relate back to a timely motion, then it is a successive § 2255 motion over which this Court does not have jurisdiction. *See Farris*, 333 F.3d at 1216. To raise new, unrelated issues at this time, Aguirre's motion would essentially be a second or successive section 2255 motion. Prior to filing a second or successive motion, a federal prisoner must obtain certification from the Eleventh Circuit Court of

Appeals. Without that certification, this Court is without jurisdiction to review the merits of a successive section 2255 motion. See 28 U.S.C. §§ 2244, 2255; *cf. United States v. Diaz-Clark*, 292 F.3d 1310, 1316, n.5 (11th Cir. 2002).

The only similarity between Aguirre's original and amended claims are that they all fall under the broad heading of ineffective assistance of counsel. As the *Davenport* Court made clear, this is not enough to satisfy Rule 15(c). In Aguirre's original ineffective assistance claim, Aguirre claimed that his counsel advised him to plead guilty to a crime he did not commit. Aguirre's amended claims allege that counsel was ineffective for failing to argue for sentencing departures based on extraordinary circumstances under § 5K2.0, safety valve applicability, and his status as a deportable alien. D-cv-11. *Davenport* itself held that merely couching an amended motion in terms of ineffective assistance does not relate back to the original motion just because it also raised ineffective assistance of counsel claims. *Id.* at 1346. Thus, Aguirre's amended § 2255 motion does not relate back and will be dismissed as untimely.

In light of all of the above, Aguirre's amended claims do not arise from the same conduct and occurrence that formed the basis of the timely asserted claim in his original motion to vacate. Therefore, Aguirre's amended claims regarding his sentencing determinations are time-barred and warrant no relief.

Even if Aguirre's tardy claims were properly before this Court, they are patently meritless. If this Court were to reach the merits of Aguirre's new claims, there is persuasive evidence in the record that this Court did award Aguirre the benefit of the safety valve pursuant to USSG § 5C1.2, undermining this claim. See Amended PSR ¶ 20. Aguirre also

received three-level downward adjustment for acceptance of responsibility.[1] See Amended PSR ¶¶ 25, 26. This Court determined Aguirre's advisory guidelines range to be from 135 to 168 months' imprisonment and his low-end sentence of 135 months' imprisonment reflects the benefit he received from this Court. D-253 at 10, 19.

As to Aguirre's claim that his counsel was ineffective for failing to seek a departure of at least two levels because of his status as a deportable alien is also without merit. Aguirre alleges he should be granted a further downward departure because he is not eligible to receive benefits provided under 18 U.S.C. § 3624(c) such as eligibility for "minimum security facility or" "halfway house" because of his "Public Safety factor" designation. D-cv-11 at 11. Aguirre maintains "that he is subject to the functional equivalent of extra punishment solely because of his status as a convicted alien." Id. at 12. Aguirre's argument is unavailing because he cannot establish a valid Sixth Amendment claim merely by pointing to some hypothetical sentencing arguments that his attorney might have additionally raised on his behalf.

There are many cases like Aguirre's in this district, and they present a number circumstances that are similar, if not identical, from one to the next. These include the incarceration of boat defendants--most, if not all, of whom–are non-citizens housed in BOP facilities to serve their sentences before being transferred to the custody of immigration authorities to await deportation. Such circumstances do not constitute grounds for a downward departure. *United States v. Veloza*, 83 F.3d 380, 382 (11th Cir. 1996) (unavailability of preferred conditions of confinement, possibility of an additional period of

---

[1] Aguirre provides no evidence or information meriting any possible departure pursuant to USSG § 5K2.

detention pending deportation following the completion of the sentence, and effect of deportation as banishment from the United States and separation from family were consequences of a defendant's alienage that did not warrant a departure). Similarly in the instant case, these factors did not require this Court to impose a sentence below the applicable guidelines level (and, any such departure would be contrary to *Veloza*, which is binding precedent).

Sentencing disparity between citizens and non-citizens could not constitute a permissible basis for departure under the guidelines or a reasonable basis for departure pursuant to 18 U.S.C. § 3553(a). If counsel had raised the issue and this Court had reduced Aguirre's sentence in an effort to equalize his sentence with the sentences of United States citizens, this Court necessarily would have increased the disparity between Aguirre's sentence and the sentences of all other similarly situated non-citizens. This would not have been permissible or reasonable. Counsel cannot be held ineffective for failing to raise this meritless issue. As Aguirre has failed to identify any extraordinary hardship he has suffered which would make his case unique from the literally thousands of other similarly-situated boat defendants who have been sentenced in this district, this Sixth Amendment challenge fails.

Accordingly, the Court orders:

That Aguirre's amended motion to vacate (Doc cv-11; cr-312) is denied.[2] The Clerk is directed to enter judgment against Aguirre in the civil case and to close this case.

---

[2] The Court denied the original motion to vacate when the Court accepted the amended motion to vacate. See Doc, cv-10.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 25, 2008.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Eustaquio Yesquen Aguirre, pro se